## Appeal of BARKER-JENNINGS HARDWARE CORPORATION.

Docket No. 5265. Submitted February 5, 1926. Decided April 21, 1926.

1. On the evidence, *held*, that the petitioner proved no good will that can be included in its invested capital for the taxable year.
2. On the evidence, *held*, that agreements to subscribe for stock may be included in invested capital only when and to the extent that payments thereon are made.
3. Request for special assessment denied.

*H. H. Shelton, Esq.*, for the taxpayer.
*Arthur H. Murray* and *F. O. Graves, Esqs.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

The Commissioner has determined deficiencies for the fiscal years ended November 30, 1918, and November 30, 1919, in the respective amounts of $4,661.42 and $51.39. The petitioner asserts that the Commissioner erred, (1) in the disallowance of a deduction of $6,000, alleged to have been paid as a business expense in the first taxable year; (2) in disallowing, as an element of invested capital, good will in the amount of $283,006.83, alleged to have been acquired by gift from a predecessor corporation; (3) in disallowing subscriptions for stock as elements of invested capital; and (4) in refusing to select representative corporations to be used as comparatives in computing tax liability, for the years involved, under section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The Barker-Jennings Hardware Co., hereinafter designated as the company, was a Virginia corporation with its principal office at Lynchburg, where it had been engaged in dealing in hardware at wholesale since its organization in 1869. It was burned out on December 2, 1917. Thereafter it liquidated its affairs and retired from business.

On December 22, 1917, a meeting of all the stockholders was held and the minority interests, 20 or more in number, all of whom were employees of the company, decided, with the concurrence of the majority holders, to organize a new corporation to take over and continue the business. Thereupon the Barker-Jennings Hardware Corporation, hereinafter referred to as the corporation, was formed with authorized capital stock in the amount of $275,000, of which $200,000 was to be common and $75,000 preferred stock. Sales of stock were restricted to employees of the company. No one could hold more than 200 shares of common and all stock subscriptions were payable in cash, but subscribers who could not pay in full by January 1, 1918, were permitted to make initial partial payments, and required to pay 6 per cent interest on all unpaid balances. Certificates were not issued until payments in full had been made. All subscribers complied with the requirements for the payment of interest on their unpaid balances due the corporation on account of stock subscriptions. All the stock was subscribed for on or before January 1, 1918.

The receipts of the corporation on account of capital stock at the organization meeting were for common $62,900, for preferred $75,000. Subscribers for more than one-half of the common made first payments at that time. By the middle of January all but three

of the subscribers had made initial payments and at that time the amounts received exceeded $180,000. The total amount subscribed for on which no payments had been made was then $3,000.

The corporation took over at cost $21,000 worth of goods which the company had stored in a neighboring warehouse; bought of a salvage concern $60,000 worth of goods, once the property of the company, which it sold at a profit; accepted delivery of a large quantity of merchandise for which the company had placed orders before the fire; and filled orders for merchandise in the amount of about $125,000, which the company had taken prior to its liquidation.

In its income and profits-tax return for 1918, the taxpayer included in the computation of its invested capital $283,006.73 on account of good will acquired from the company. Upon audit the Commissioner refused to include any good will in the invested capital of the corporation.

#### OPINION.

LANSDON: The first contention of the petitioner is that it should be allowed to deduct $6,000 from its income for the fiscal year ended November 30, 1918, as an ordinary and necessary expense incurred in the purchase of certain catalogues which it used in advertising its wares and business. The evidence adduced in support of this issue is so vague, inconclusive, and contradictory that we are unable to make any findings of fact based thereon sufficient to enable us to disturb the determination of the Commissioner. The exact amount paid in this connection can not be ascertained from the testimony, nor is the Board able to determine whether the expenditure, if actually made, was in the nature of an operating expense deductible from current income or a capital outlay to be charged off over a period of two or more years.

The petitioner asserts that it acquired good will from the company that should be included in the computation of its invested capital for each of the taxable years in the amount of $283,006.73. There is no evidence that either the predecessor or its stockholders ever transferred any such good will to the petitioner, nor is there any persuasive proof of the value of good will possessed by the company at the date of its liquidation. Nothing in the record enables us to determine the value for good will claimed or that, in fact, it was ever acquired by the taxpayer in any way or form that justifies us in allowing it as an element of invested capital for the taxable years.

The taxpayer claims $275,000 invested capital on account of capital stock actually paid for and issued during its fiscal year 1918. No stock was issued to any subscriber until he had paid for it in full.

No notes in payment were given by the subscribers. The Commissioner held that the stock subscriptions, as such, could not be included in invested capital, and recognized only the payments thereon from the dates when made. This gives $222,912.68 as the average invested capital on account of such stock subscriptions and payments thereon. His determination is clearly in accordance with the decision of the Board in *Appeal of the Central Consumers Wine & Liquor Co.*, 1 B. T. A. 1190.

No admissible evidence in support of the request for determination of tax liability under sections 210 and 328, respectively, of the Revenue Acts of 1917 and 1918, was offered, and therefore the Commissioner must be sustained in his ruling on that issue.

> *The deficiencies are $4,661.42 for the fiscal year ended November 30, 1918, and $51.39 for the fiscal year ended November 30, 1919. Order will be entered accordingly.*